HOLZHAUSEN, Respondent, v. HOSKINS et al., Appellants.

St. Louis Court of Appeals, November 28, 1905.

1. **FORCIBLE ENTRY AND DETAINER: Possession: Landlord and Tenant.** In order to maintain an action of forcible entry and detainer, the plaintiff must have been in actual possession or occupancy of the premises forcibly entered; a tenant who is disseized by forcible entry has the right of action instead of the landlord.

2. ———: ———: ———: **Outer Walls.** As a general rule, the possession by tenant of leasehold property carries with it everything appurtenant to it or essential to its enjoyment, including outside walls.

3. ———: ———: ———: ———. But where a building was let to several tenants, occupying the different parts, and the lease held by a tenant of the first floor and cellar provided that the landlord should make outside repairs and the tenant inside repairs, and where the landlord was underpinning the foundation and shoring a wall to protect it against an adjacent excavation, the landlord and not such tenant had a right of action for forcible entry and detainer against the owner of the adjacent lot who cut away a part of the wall and built on the space.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough*, Judge.

AFFIRMED.

*Seneca N. & S. C. Taylor* for appellants.

Where the property is in the possession of a lessee, the lessee only and not the owner can maintain an action of forcible entry and detainer. Armstrong v. Hendrick, 67 Mo. 543; McCartney's Admr. v. Alderson, 49

Mo. 457; Burns v. Patrick, 27 Mo. 434; Collier v. Green, 83 Mo. App. 166. Actual possession by plaintiff, at the time of the forcible entry and detainer is indispensable to recovery. McCartney's Admr. v. Alderson, 49 Mo. 457; Reed v. Bell, 26 Mo. 218; Nelson v. Nelson, 30 Mo. App. 189. Waiver is a mixed question of law and fact, and each case must depend upon its peculiar circumstances. It is a question of intention, and that is to be determined by the triers of fact. Marchildon v. O'Hara, 52 Mo. App. 523; Lee v. Hassett, 39 Mo. App. 67; Okey v. Ins. Co., 29 Mo. App. 105. Where a person by words or conduct voluntarily induces another to act in view of a certain state of facts, he will be estopped from alleging against him a different state of facts. State ex rel. v. Branch, 151 Mo. 622; 52 S. W. 390; Reynolds v. Kroff, 144 Mo. 433, 46 S. W. 424; Cornwall v. Ganser, 85 Mo. App. 679; Pitman v. Milling Co., 78 Mo. App. 441.

*Kinealy & Kinealy* for respondent.

Under the lease read in evidence, the tenant White had no possession of the outside wall of this building, and under the evidence in the case plaintiff was entitled to recover as a matter of law. Fuller v. Rose, 85 S. W. 391, 186 Mo. 325; Ward v. Fagin, 28 Mo. App. 116; Smith v. Rector, 107 N. Y. 610; Rowan v. Kelsey, 4 Abb. App. Dec. 127; Hahn v. Baker Lodge, 21 Ore. 30.

GOODE, J.—This is an action of forcible entry and detainer instituted before a justice of the peace and afterwards tried anew on appeal in the circuit court, from whence it was brought to this court. The plaintiff owns the premises known as Nos. 1909 and 1911 Market street in the city of St. Louis. The building on plaintiff's lot extends back to an alley. It is three stories high in front, but the rear portion consists of two wings one

story high.   The entire structure was built about twenty-seven years ago.   It has three doors on Market street, of which one affords entrance to the room 1909, one to room 1911 and the third, between those two, leads to a flight of stairs giving access to the stories above.   The upper rooms were occupied by tenants, and so were the business rooms on the first floor.   The ground-floor rooms and the basement of No. 1911 was occupied at the time of the forcible entry by Hugh B. White, under a written lease dated August 27, 1902.   The extent of his leasehold interest in the premises is defined in the lease as follows:

"The entire room on the ground floor of the premises known and described as No. 1911 Market street in the city of St. Louis, Missouri, and the cellar underneath the same, said building being on the north side of Market street between 19th and 20th streets and in city block No. 903."

The lease contained a clause binding plaintiff to make all outside repairs on the room and building and White to make all inside repairs.   The unlawful entry by defendant occurred in April, 1903.   In that month the defendant acquired a lot fifty feet wide immediately west of plaintiff's premises; that is, just west of the west wall inclosing room 1911.   It seems there was a building on defendants' lot but they wanted to extend it further to the rear.   Before doing so they had their ground surveyed by a man named Pitzman, who located the east line of the defendants' lot about four inches east of the west line of plaintiff's wall, at the alley, and one and one-half inches east of the west line of plaintiff's wall at a point seventeen feet and eight inches south of the alley.   That is to say, according to Pitzman's survey the west wall of plaintiff's building had been set over on the lot owned by defendants so that said wall occupied a strip of defendants' lot, which strip was about

four inches wide at the alley and tapered to a width of one and one-half inches at a point seventeen feet and eight inches south of the alley. On ascertaining the supposed encroachment of plaintiff's house on their lot, one of the defendants spoke to plaintiff about it and she said, in substance, that she did not want anything that belonged to other people, but could do nothing in the matter as her house had been built a long time and she could not tear it down. She was told to see the surveyor (Pitzman) but instead of consulting him she went to an attorney for advice. She shored and underpinned her wall to prevent injury to it from the excavation for defendants' basement. When the defendants began to erect their wall they chiseled away the bricks from the plaintiff's west wall, beginning at the rear end and running south seventeen feet and eight inches, to a depth corresponding to the width of the aforesaid strip. Plaintiff's wall was cut away to the top of the fire-wall of the one-story part of the building. The defendants built their wall against the bricks of plaintiff's wall, thus chiseled away, until the top of plaintiff's fire-wall was reached and from there built on top of plaintiff's wall the entire height of their building. The testimony is that defendants "corbeled" their wall so that it overhung and rested on plaintiff's west wall along a line seventeen feet and eight inches in length. Defendants' building is three stories high and, in consequence of the acts above narrated, their east wall occupies a strip of ground formerly occupied by plaintiff's wall and of the dimensions stated. The jury in the circuit court returned a verdict finding defendants guilty of unlawfully entering and detaining a strip of ground seventeen feet and eight inches in length, four inches wide on the line of the alley and four inches wide on the south end, and that the complainant had been damaged in the sum of $250. Judgment was entered on that verdict; but after defendants

had moved for a new trial, the court granted plaintiff leave to enter a remittitur and she remitted from the verdict all the land except the strip originally described, and $150 of the damages. This left $100 as the amount of damages assessed for the forcible entry. After the remittitur the court overruled the motion for a new trial and entered judgment that plaintiff have restitution of the strip first described, recover $200 damages for the unlawful entry and two cents a month for the detention of the strip, the jury having found its monthly value to be one cent. In other words, in obedience to the statutes, the court entered judgment for double the amount of damages found by the jury and double the amount of monthly rents and profits.

We shall not concern ourselves with the instructions in this case further than to remark that the court left it to the jury to say whether plaintiff was in possession of the disputed strip and the defendants forcibly entered on it and disseized her. The defendants showed no right to enter the plaintiff's premises in the manner they did. Her building had stood on the contested strip for many years, and the. way to settle the question of title or right of possession, was by an action of ejectment. The defendants disturbed this long and peaceable possession with a strong hand and were guilty of a forcible entry.

Instructions were asked propounding the theory that plaintiff was estopped by her statement that she wanted nothing that belonged to anyone else, and by the fact that, in order to prevent her wall from falling when defendants excavated for their building, she underpinned it along the line asserted by defendants to be the true boundary between their lot and hers. There is not a word of evidence in the case which goes to support an estoppel against the plaintiff. She refused to demolish her wall so as to let defendants build where

they wished, and certainly gave them no cause to believe she was willing for them to demolish it. The only plausible defense against her present action is that the right of action was vested in White, the tenant of room 1911, and not in her. It is true that White was the actual occupant of the room and basement; and true, too, that actual possession, or occupancy, is necessary to maintain an action of forcible entry and detainer. [Burns v. Patrick, 27 Mo. 434.] A tenant who is disseized by a forcible entry has the right of action instead of the landlord. White's enjoyment of his leasehold was not substantially disturbed. His occupancy of room No. 1911 and the cellar beneath was in no way molested by the unlawful intrusion of the defendants on the wall and the space above and below it; and under such circumstances a tenant might be unwilling to incur the expense and annoyance of prosecuting a forcible entry action for his landlord's benefit. The general rule regarding leaseholds is that the lease of a house carries everything appurtenant to it or essential to its enjoyment, including the outside walls. [Witte v. Quinn, 38 Mo. App. 681; Riddle v. Littlefield, 53 N. H. 503; Baldwin v. Morgan, 43 Hun 355; 2 McAdam, Landld. and Ten. (3 Ed.), sec. 442.] The right to the possession of the walls of a leased building, has usually been presented in a controversy between the landlord and the tenant over the latter's right to display signs on the walls or let them for advertising purposes. The rights and duties of the two in respect of the possession and use of the walls, must be ascertained by interpreting the contract of lease according to reason and with regard to the particular point presented for decision. When only a room in a building of several stories or rooms is let to a tenant, the latter does not acquire a lease and possession of the outer walls and of the ground on which the house stands, for all purposes, nor as completely as when

the entire building is let. [Stockwell v. Hunter, 11 Met. 448; Shawmut Bank v. Boston, 118 Mass. 125; Hahn v. Baker Lodge, 21 Ore. 30; Lieferman v. Osten, 64 Ill. App. 578.] Those adjudications are not pertinent to the question for decision except in a general way, as showing that when a room in a house is let, the tenant's possession of the external parts of the building does not follow always as a legal incident. The general rule regarding a leasehold is that the lessee acquires the possession and use during his term of the estate owned by the lessor. [Taylor, Landld. and Ten. (9 Ed.), sec. 161.] The tenant's dominion over the premises is less than the owner's; for he may not damage the freehold, and the extent of his use is controlled, in some measure, by the purpose of the letting. Besides what passes by the lease as an integral part of the demised premises, the tenant may acquire incidental rights, in the nature of easements or appurtenances essential to the use of the tenement proper. [Witte v. Quinn, 38 Mo. App. 681, 692.] What he gets, and whether a thing claimed is a parcel of the premises let or merely incident thereto, depends on the intention of the parties as expressed in the lease agreement, interpreted, if uncertain, by the state of the premises and the purpose of the letting. [Fuller v. Rose, 110 Mo. App. 344, 85 S. W. 931.] What we are called on to decide is whether or not there was any evidence that plaintiff held possession of the disputed strip and was forcibly evicted by defendants. It is contended there was no such evidence and, therefore, the court below erred in submitting those questions to the jury instead of holding that White was in possession, by force of his lease of the storeroom and cellar. Now in point of fact the plaintiff was in actual occupancy of the exterior of the wall when defendants entered. She was underpinning the foundation and her shores were set against the wall. But if we scrutinize the lease, hold-

ing in mind the plural tenancies of the building and the use made of the west wall by White, there is little or no reason to conclude White occupied the controverted space, either above the roof of plaintiff's house or in the wall or under it. As said above, ordinarily the demise of a house carries the use and possession of the walls on both their inner and outer surfaces. The lessee of a dwelling may train vines on the outside walls, or make any other use of that surface consistent with his lease and not harmful to the freehold. A man who rents a storeroom for mercantile purposes may display signs on the outside of the front wall, or on a side wall when the room is on a corner at the intersection of two streets. In such instances the walls, as well as the ground beneath the house, pass as parcel of the demised tenement and not as incidents or easements. And this is generally true; for assuredly the walls of a tenement are part of it. [Lowell v. Strahan, 145 Mass, 1; and see 26 Am. Law Reg. 716, wherein are collected in a note the cases on this subject.]

But, as said above, the intention of the parties controls; and when there is sound reason against the opinion that the walls of a house and the ground under it, passed to a lessee as part of the thing let, and sound reason for the view that they were taken by the tenant incidentally, the latter view will prevail. Now when a building is let to several tenants as the lessees of separate rooms in it, a confusion of rights would occur if any one tenant took exclusive possession of the exterior walls as parcel of his leasehold; and in such instances a tenant acquires only the incidental use of the walls to support his tenements, admit light through the windows, or afford him other quasi easements not incompatible with the use and enjoyment by the other lessees of their tenements in the building. [Seidel v. Bloeser, 77 Mo. App. 172; Harringron v. Watson, 11 Ore. 143; Doyle v. Lord,

64 N. Y. 432; Graves v. Berden, 26 N. Y. 408; Winton v. Cornish, 5 Ohio 477; Stockwell v. Hunter, 11 Met. 448; Shawmut Bank v. Boston, 118 Mass. 125; Lieferman v. Osten, 64 Ill. App. 578.] In the instance before us, the extent of White's possession is pretty well marked by the written contract between him and plaintiff. The ground floor room and cellar were let to him and it was provided that plaintiff should make all outside repairs and he all inside repairs. This clause is relevant to the immediate point, as plaintiff's duty to repair the outside of the building was inconsistent with the notion that White was in exclusive possession of the outer surface of the exterior wall of his storeroom. So far as appears, his room was not lighted through the west wall, and he made no use of that wall except for inclosing the room. No doubt if the entry on the wall by defendants had gone far enough to threaten his possession of the room or cellar, he could have maintained an action of forcible entry against them. As the facts stood, we are of the opinion that they tended to prove plaintiff was in actual possession of the space in controversy when the eviction occurred, as she was underpinning and shoring the wall at the time. We are of the opinion, too, that she was entitled to the possession, by the terms of the lease, for all purposes which would not interfere with the enjoyment of their tenements by the lessees of the several rooms in the building. But it would seem to be enough to enable her to maintain this action that she was occupying the strip with the consent of her tenants when defendants entered.

The judgment is affirmed. All concur.